ALBERT O. WHITTEMORE, Respondent, v. JAMES FAR-
RINGTON, Appellant.

*Quit-claim deed — incumbrance on title conveyed by — remedy of grantee.*

In the absence of fraud or misrepresentation the purchaser of land, who has neg-
lected to have covenants of title inserted in his deed, has no relief at law
or in equity where it is found, after his acceptance of the deed, that the prop-
erty conveyed is incumbered.

The ignorance of both parties to the deed, of the existence of the incumbrance,
does not change the rule.

In such case the existence of a mutual mistake without fraud will not justify a
court of equity in compelling a defendant to give a warranty deed of the land,
and to pay off all incumbrances existing at the time of the former conveyance.

Where the fact is equally unknown to both parties, or where each has equal and
adequate means of information, if the parties have acted with entire good
faith, a court of equity will not interpose.

APPEAL from a judgment in favor of plaintiff, adjudging that
the defendant James B. Farrington, upon the payment of the sum
of $300 and interest, execute, acknowledge and deliver to the plain-
tiff a warranty deed of the lands in the complaint mentioned and
described, with covenants against all incumbrances existing prior to
the 10th day of December, 1873, and also adjudging the defendant
to pay off the Wing mortgages, so called, or otherwise remove the
same of record, and cause the same to so appear in the office of the
clerk of Steuben county.

The facts in this case were these : There was a verbal agreement
between the parties for the exchange of lands.   The plaintiff's own
version is this : The defendant and one Jackson came and said to
him, " We have come over to accept your proposition," and I said,
" I will repeat it over, the proposition is this : I am to give you
these two pieces of land and a note for $300 for the saw-mill prop-
erty."   Subsequently, and about the middle of December, 1873,
the plaintiff made out and delivered to the defendant two warranty
deeds for his land, and said, " Here are two warranty deeds, and I
shall expect a warranty deed from you for the saw-mill property."
The defendant took the deeds and made no reply.   Subsequently,
about January 23, 1874, the defendant sent the plaintiff a deed of

the saw-mill property. The defendant, the next day, returned it with a letter, saying, " I inclose the deed for correction as to boundary. Please fill up the blanks, also, where I have written in pencil. I see you have sent me only a quit-claim deed. You said you would give a warranty deed as I gave you one." The defendant made the correction asked for, which was the insertion of the word " north," and returned the deed to the plaintiff, and the plaintiff had it recorded.

Prior to receiving the defendant's deed, the plaintiff had taken possession of the saw-mill property, and had leased it to one Blanchard. Before the discovery of the mortgage, the plaintiff had spent $1,800 for improvements on the property, and since that about $500.

About the middle of April, 1874, the defendant discovered that there was an old mortgage on the saw-mill property, made in 1863, and recorded in 1864. Neither party knew of the existence of this mortgage at the time of the contract, or at the time of delivering the deeds.

At the beginning of the negotiation which led to the original verbal contract, the saw-mill property was about to be sold on foreclosure. The plaintiff himself had a mortgage on the property. The defendant urged the plaintiff to buy on the foreclosure sale, but he declined to do so, and the *plaintiff* bought.

After the verbal contract for the exchange had been made, the defendant proposed to have the sheriff's deed on the sale made out to the plaintiff, and argued it was the best kind of deed, as they could never go behind it. The plaintiff did not agree to take such a deed. There was no evidence whatever that any fraud was intended. The defendant knew nothing about the incumbrances, while the plaintiff was himself an incumbrancer.

There is no evidence that, at the time when the defendant finally delivered his deed to the plaintiff, or before that time, he said or did, or had said or done, any thing to induce the plaintiff to suppose or believe that the deed conveyed a good title, or that there were no incumbrances. All that appears is, that the plaintiff says that the defendant and Jackson *argued* that a sheriff's deed was the best kind of a deed, as they could never go behind it ; but that was not the deed executed to the plaintiff.

The court below held that the plaintiff in accepting the deed was

required by law to examine for himself, and insist on such cove-
nants as would fully protect him in regard to the title; that the
plaintiff having accepted and received the quit-claim deed of the
defendant, he must be deemed to have done so in full satisfaction
and performance of the parol agreement. But that the defendant
having delivered and the plaintiff having accepted it under mutual
mistake as to the mortgage, the plaintiff having reason to believe
from the acts of the defendant that the deed conveyed a good title,
and being guilty of no negligence in not examining the title, the
plaintiff was entitled to relief from the legal effect of the acceptance
and to have a specific performance of the parol agreement.

*J. McGuire,* for the appellant.

*M. M. Mead,* for the respondent.

LEARNED, P. J.:

With scarcely any variation the facts are the same as they were
on the former trial. (14 S. C. N. Y., 392.) It was there held on
appeal that in the absence of fraud or misrepresentation, neither
of which existed in this case, the purchaser of land who has
neglected to take covenants in his deed has no relief at law or in
equity. (See the cases there cited.) Indeed, this view seems to be
accepted in the court below, as it was held that it was the plaintiff's
duty to examine and insist upon such covenants as would protect
him, and that the acceptance of the deed was in full satisfaction and
performance of the parol agreement. (*Burwell* v. *Jackson,* 9 N.
Y., 535.)

But the court held that there was a mutual mistake as to the
existence of the mortgage, and therefore the plaintiff should be
relieved in equity from the legal effect of such acceptance. There
was, however, no mistake as to the nature and character of the deed.
The plaintiff saw what it was and called the defendant's attention
to it, and then of his own free will accepted it. That acceptance
was a consent on his part to take the property without any
warranty.

The court below, however, held that, because the plaintiff was
ignorant of the existence of this mortgage, therefore the acceptance

of the quit-claim deed was under a mistake and should be relieved against. This cannot be so. If it were, the grantee in a quit-claim deed might always look to the grantor for damages, in case the premises should prove to be incumbered by a mortgage, of which the grantee had no actual knowledge. This rule would have the effect of turning quit-claim deeds into deeds with full covenants. It would be contrary to the contract of the parties; to settled rules of equity, and of law (2 Kent Com., 473), and to the statute (1 R. S., m. p. 738, § 160).

Nor does it help the matter that the court adds, the plaintiff believing, and having good reason to believe from the acts of the defendant, that the deed conveyed a good title, and that there was no incumbrance thereon.

The defendant never stated, expressly or by implication, that there was no incumbrance. The plaintiff's own account of the conversation negatives any such statement. Nor did the defendant ever say any thing as to the effect of the deed until some months after it had been delivered and accepted. The defendant did *argue*, as the plaintiff says, that a sheriff's deed was the best kind of a deed; but such a deed the plaintiff did not agree to take and did not take. There is no evidence whatever, up to the time of the acceptance of the quit-claim deed, showing any representations by the defendant as to the nature or effect of a quit-claim deed, or as to the actual condition of the property in respect to incumbrance. The case is entirely wanting of all fraud or misrepresentation.

Further, the defendant never agreed to give a warranty deed, and the court ought not to make a new contract for him. Whatever contract there was, arose out of the conversation of the parties. Assuming even that this contract would have justified the plaintiff in refusing to accept an incumbered title, it gave him no right to a warranty deed.

We have already seen that there was no mutual mistake as to the contents of the quit-claim deed. But the court below held that the ignorance, as to the existence of the mortgage, entitled the plaintiff to relief. In the recent case of *Grymes* v. *Sanders* (93 U. S. Rep., 55) the court say, " that mistake to be available in equity must not have arisen from negligence where the means of knowledge were easily accessible. The party complaining must have exercised

at least the degree of diligence which may fairly be expected from a reasonable person. The parties, in dealing with the property, stood upon a footing of equality; they judged and acted respectively for themselves. The contract was deliberately entered into on both sides." The court refused relief.

That language applies to the present case. The means of knowledge were equally within reach of both. Examination at the clerk's office would have informed the plaintiff of the existence of the mortgage. "Where the fact is equally unknown to both parties, or where each has equal and adequate means of information, if the parties have acted with entire good faith, a court of equity will not interpose." "The like rule will apply to all cases of sale of real estate or personal estate made in good faith, where material circumstances affecting the value are equally unknown to both parties." (1 Story's Eq., § 150.)

But, granting that the contract for the exchange of these two pieces of property was made under mutual mistake, as to the existence of this mortgage, and that this was such a mistake as would authorize the plaintiff to maintain an action to rescind that contract, the difficulty is that the plaintiff does not ask for that remedy. He desires, not to rescind the contract, but to have the court make a new contract. After he had discovered the alleged mistake he spent money on the property. (*Cobb* v. *Hatfield*, 46 N. Y., 533.) The defendant might well say: I am willing to rescind the contract altogether, since there was a mistake, but I never agreed to pay a sum of money towards making the exchange.

If we take the simple facts of the case, the defendant verbally agreed to sell a piece of land to the plaintiff for so much; the plaintiff paid the price; the defendant executed a quit-claim deed; the plaintiff sent back the deed saying that the defendant said he would give a warranty deed; the defendant returned the quit-claim deed and the plaintiff kept it and had it recorded. Three months after he discovered a prior and a recorded mortgage on the premises, of which neither party knew; after the discovery he kept the property and spent money on it.

I think he must bear the loss, and that the judgment should be reversed and a new trial granted, costs to abide the event.

BOCKES, J. (dissenting):

I gave expression to my views of this case on the merits when it was before the court on the former appeal. (14 N. Y., Sup. Ct. Rep. [7 Hun], 392.) If correct in my reasonings and conclusions then, the judgment now appealed from should be affirmed; for the findings of fact and law now present most unmistakably (as perhaps they did not before so fully) what I then deemed the entire case to be between the parties. On re-examination of the case I am confirmed in my views then expressed. I am of the opinion that the judgment should be affirmed.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment reversed and new trial granted, costs to abide event.